UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PHOENIX FOUR, INC.,

       Plaintiff,       No. 05 CIV. 4837 (HB)

  - against-        **OPINION & ORDER**

STRATEGIC RESOURCES CORPORATION,
PAUL SCHACK, CHRISTIAN M. VAN PELT,
JAMES J. HOPKINS III, ROBERT H. ARNOLD,
R.H. ARNOLD & CO. INCORPORATED,
JOEL G. SHAPIRO, and JGS ADVISORS LLC,

       Defendants.
------------------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

  Plaintiff Phoenix Four, Inc. ("Phoenix") brought this action against defendants Strategic Resources Corporation ("SRC"), Paul Schack ("Schack"), Christian M. Van Pelt ("Van Pelt"), James J. Hopkins III ("Hopkins"), Robert H. Arnold ("Arnold"), R.H. Arnold & Company, Inc. ("RHAC"), Joel G. Shapiro ("Shapiro"), and JGS Advisors LLC ("JGS") alleging: (i) violations of the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 et seq. (against SRC and RHAC only); (ii) violations of the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 et seq.; (iii) breach of fiduciary duty; (iv) common law fraud; (v) negligent misrepresentation; (vi) breach of contract (against SRC, RHAC, and JGS only); (vii) negligence; and (viii) declaratory relief. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1332(a)(4). All defendants except for Shapiro and JGS now move to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, the defendants' motion to dismiss is GRANTED in part and DENIED in part.

## I. BACKGROUND

  The following facts are taken from the allegations in the complaint unless otherwise stated.

**A.** **The Parties**

  Phoenix is an investment company incorporated in the Commonwealth of the Bahamas ("The Bahamas") in 1993 and licensed as a mutual fund under Bahamian law in 1997.

1

Complaint ("Compl.") ¶ 23. Its principal place of business is in Nassau, The Bahamas. Id. ¶ 9.

SRC served as Phoenix's investment adviser and provided other services to it. Id. ¶ 10. SRC is incorporated under the laws of New York with its principal place of business in New York City. Id.

Schack and Van Pelt were managing directors of Phoenix and members of its Board of Directors (the "Board") from 1994 until about April 21, 2004. Id. ¶¶ 11, 12. Both Schack and Van Pelt are, and at all relevant times were, principal shareholders, senior officers, and directors of SRC and in those capacities transacted business in New York City and continue to do so. Id. Schack is a citizen of the State of New York and resides in New York City. Id. ¶ 11. Van Pelt is a citizen of the State of New Jersey. Id. ¶ 12.

Hopkins was a member of Phoenix's Board of Directors from April 2004 through August 2004. Id. ¶ 13. He is also, and at all relevant times was, a principal shareholder, senior officer, and director of SRC and transacted business in New York City and continues to do so. Id. Hopkins is a citizen of the State of New Jersey. Id.

Arnold was a managing director of Phoenix and a member of its Board of Directors from at least October 1995 until about April 21, 2004. Id. ¶ 14. He is a citizen of the State of New York and transacted business in New York City and continues to do so. Id.

RHAC is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York City. Id. ¶ 15. Arnold is, and at all relevant times was, the senior officer and director of RHAC. Id. ¶¶ 15, 16.

JGS is a limited liability company organized under the laws of the State of New York and has its principal place of business in New York City. Id. ¶ 17. The company was established by Shapiro, and performed a broad range of services for SRC and Phoenix beginning some time after July 2000. Id. Shapiro is a citizen of the State of New York, resides in New York City, and transacted business in New York City and continues to do so. Id. ¶ 18.

**B.    Relationship Between Phoenix, SRC, and RHAC**

Schack, Van Pelt, and Hopkins founded and owned SRC, which was established to act as an adviser to an investment or mutual fund that they would form. Id. ¶ 25. These three defendants then provided assistance in establishing Phoenix, and solicited investors for the fund. Id. ¶¶ 26, 27. On November 5, 1993, Phoenix entered into an Investment Advisory Agreement with SRC ("Advisory Agreement") pursuant to which SRC agreed to serve as the investment

2

adviser for Phoenix for an "indefinite period" and provide advice on the trading of securities. Advisory Agreement, Ex. 1 to Compl., art. II, V. In return for its services, SRC would earn a management fee based on the value of Phoenix's gross assets, and a performance fee based on Phoenix's net asset value per share. See id. art. III. In December 2002, after two Board members pressed SRC to decrease its fees, an amended advisory agreement was negotiated ("Amended Agreement"). Compl. ¶¶ 68, 70. SRC never signed that agreement despite language in the original Advisory Agreement that it could "not be altered or amended except in a writing signed by both parties." Id. ¶ 210; Advisory Agreement, Ex. 1 to Compl., art XI. In October 2003, SRC proposed yet a different fee schedule that was approved by a vote of six directors. Compl. ¶ 73.

Through May 19, 2005, SRC regularly furnished Phoenix with advice regarding the investment in, purchase, sale, or disposal of securities or other properties and, together with the Phoenix Board of Directors, conducted Phoenix's business. Compl. ¶ 29. Phoenix was SRC's sole client. Id. ¶ 30. From 1997 to December 2, 2002 and then again from May 1, 2003, SRC also served as Phoenix's administrator as defined by the Mutual Fund Regulations and Investment Funds Regulation of the Commonwealth of the Bahamas. Id. ¶ 31.

Arnold and RHAC had a business association with SRC, Schack, Van Pelt, and Hopkins. Id. ¶ 37. As a result of that association, SRC, Schack, and Van Pelt caused Phoenix to make Arnold a Director of Phoenix in or around 1995, and to employ RHAC as a financial adviser. Id. In or around April 1996, SRC caused Phoenix to enter into an investment advisory agreement with RHAC, but this agreement was never submitted to the Board or its members for approval. Id. ¶ 86. From at least early 2000, RHAC assisted in calculating the value of Phoenix's assets and net asset value per share. Id. ¶ 39.

**C.    The Alleged Wrongdoing**

Phoenix alleges that Schack, Van Pelt, Hopkins, Arnold, and the other Directors they caused to be appointed to the Board treated Phoenix as their "personal candy store" and incurred unwarranted expenses for their own benefit. Id. ¶ 4. The Directors routinely approved transactions in which they were self-interested: they invested Phoenix's money in assets in which they had financial interests and paid fees to third parties to whom they were related. Id. ¶ 94. In order to justify such transactions and increase SRC's fees under the Advisory Agreement, the defendants inflated the value of Phoenix's assets and those of its subsidiaries that

3

were under SRC management.  Id. ¶ 109.  Further, Schack, Van Pelt, and Arnold caused Phoenix's Articles of Association to provide indemnification to its directors and officers except for willful default or gross negligence in contravention of Bahamian law.  Id. ¶ 322.

The defendants inflated Phoenix's asset values by listing yet to be acquired assets in Phoenix's financial statements.  For example, the transaction by which Phoenix was to acquire its interest in a start-up insurance company known as Insurent did not close until after March 18, 2002.  Id. ¶¶ 110, 116, 118.  Nonetheless, the defendants caused Phoenix's Consolidated Financial Statements for the Year Ending December 31, 2001 to list the value of Phoenix's interest in Insurent as $26.7 million.  Id. ¶ 120.

The defendants also assigned inflated values to Phoenix's assets.  For example, on December 14, 2002, an outside entity called Houlihan Valuation Advisers ("Houlihan") valued Insurent at $63 million.  Id. ¶¶ 124, 130, 134.  The defendants listed the value of Phoenix's then 51.38% interest in Insurent, however, as $57 million as of December 31, 2002.  Id. ¶ 131.  For that figure to be accurate, the total value of Insurent would have had to increase from $63 million to $110.9 million—a 76% increase—in seventeen days.  Id.  In addition, the defendants assigned values to other Phoenix assets—Shoppes@IV, Seacourt Pavilion, Westminster Mall—that exceeded the values reported by third party appraisers.

On February 5, 2003, the Board unanimously approved a $57 million number to Phoenix's interest in Insurent.  Id. ¶ 133.  The directors' vote was based on representations by Schack that this was the value Houlihan and BDO International ("BDO"), Phoenix's outside accountant and auditor, had assigned to this asset.  Id. ¶ 134.  On January 14, 2003, just a few weeks earlier, Schack had reported to the Board that Houlihan had valued Insurent at $70 million.[1]  Id.  Further, by the end of April 2003, BDO insisted that a statement be inserted in Phoenix's Consolidated Financial Statements for the Year Ending December 31, 2002 to the effect that the value assigned to Insurent was excessive.  Id. ¶ 135.  Although BDO's position was disclosed to the entire Board on April 29, 2003, the Board failed to decrease the net value assigned to Insurent.  Id.

The Insurent agreements stated that at the same time Phoenix was to acquire its interest in Insurent, an SRC subsidiary and RHAC were also to acquire interests in Insurent.  Id. ¶ 113.

---

[1] Phoenix asserts that Schack's report was false, because Houlihan had valued Insurent at only $63 million.  Compl. ¶ 134.

4

Despite these statements, Phoenix alleges that the defendants never disclosed that SRC and RHAC intended to acquire an interest in Insurent prior to causing Phoenix to enter into contracts to acquire an interest in the same entity. Id. ¶ 115. Further, SRC has refused to produce a complete set of the minutes of Phoenix's Board meetings, including the meetings at which the Board would have discussed the acquisition of Insurent. Id. ¶ 114.

Phoenix further alleges that SRC, Schack, Van Pelt, and Arnold made other fraudulent misrepresentations to the Phoenix Board. For instance, on December 27, 2002, Schack and Van Pelt represented to the Phoenix Board that a payment of $848,000 in performance fees to SRC was "on account of fees as much as two years past due" when they knew that SRC was not entitled to any such performance fees. Id. ¶ 179. On February 5, 2003, Schack reported at a telephonic Board meeting that SRC had obtained an independent valuation for Phoenix's asset known as South Brunswick Square when no such "truly independent valuation" had been obtained. Id. On February 5, 2004, SRC made various statements in a letter to the Phoenix Board regarding the return on Phoenix's assets, SRC's maximum fee, third party appraisals of assets, and that Phoenix was not facing the threat of bankruptcy. Id. ¶ 219. Phoenix alleges that each of these statements was false and misleading. Id. ¶ 220. In 2004, Arnold, SRC, Schack, and Van Pelt caused an entity called FTI to conduct a review of the fees SRC had been paid. Id. ¶ 76. At that time, Arnold failed to call FTI's attention to the lower fees that had been negotiated in the Amended Agreement. Id. ¶ 77.

Phoenix also alleges that SRC engaged in other self-dealing. For instance, Phoenix and SRC entered into property management and leasing agreements for almost every asset that Phoenix acquired. Id. ¶ 82. The contracts were not commercially reasonable because SRC charged higher fees than it could have obtained in arms-length negotiations. Id. ¶ 83. SRC also caused Phoenix to indirectly pay its rent, legal fees, and direct marketing, lease administration, and construction management expenses. Id. ¶¶ 174-75, 211-12.

As a result of these and other actions taken by the defendants, Phoenix faced a liquidity problem and was forced to suspend the sale and redemption of its shares in February 2003. Id. ¶ 7. In April 2004, after Schack, Van Pelt, and Arnold resigned from the Board and a new Board that included Hopkins was installed, the new Board voted to suspend payments to all third parties including SRC. Id. ¶ 8. The new Board also required SRC to obtain authorization from two Board members before it made any payments to itself that exceeded $50,000. Id. Despite this

5

directive, SRC caused itself to be paid $2.3 million. Id. On April 23, 2004, SRC also caused RHAC to be paid almost $129,000, and RHAC accepted this payment, despite the knowledge that the Board had voted to suspend payments to third parties. Id. ¶ 190. The new Board was unaware of these payments. Id. ¶ 188, 192. Phoenix is currently saddled with assets that are burdened with debt and worth millions of dollars less than represented by the defendants, and is unable to attract new investors. Id. ¶ 7.

## II. STANDARD OF REVIEW

O a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must construe all factual allegations in the complaint in favor of the non-moving party. See Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). The court's consideration is normally limited to facts alleged in the complaint, documents attached as exhibits to the complaint or incorporated in the pleadings by reference, and matters of which judicial notice may be taken. See Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## III. DISCUSSION

### A. Violations of the Investment Company Act of 1940

Phoenix asserts that SRC and RHAC violated Sections 80a-10, 13, 15, 17, 30 and 33 of the Investment Company Act of 1940, 15 U.S.C. Sections 80a-1 et seq. ("ICA"). Phoenix contends that these infringements by SRC and RHAC constitute a breach of their fiduciary duty to Phoenix in violation of 15 U.S.C. Section 80a-35 and entitle Phoenix to rescind its contracts with SRC and RHAC, as well as to an injunction, pursuant to 15 U.S.C. Section 80a-46.

The defendants contend that Phoenix's claim is time barred. Those courts that have considered this question share the defendants' view and have applied the one-year/three-year statute of limitations applicable to various provisions of the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act"). See Green v. Fund Asset Mgmt, L.P., 19 F. Supp. 2d 227 (D.N.J. 1998); Friedlob v. Trustees of the Alpine Mut. Fund Trust, 905 F. Supp. 843 (D. Colo. 1995); Merine v. Prudential-Bache Util. Fund, Inc., 859 F. Supp. 715 (S.D.N.Y. 1994). Those courts reason that: (i) "federal interests in predictability and judicial economy counsel adoption of a uniform limitations period" for ICA claims; (ii) the

uniform limitations period should derive from a federal source because ICA claims are multi-state in nature; and (iii) the ICA claims fit closely with causes of action subject to the one-year/three-year limitations period under the 1933 and 1934 Acts because all these statutes are "intended to facilitate the central goal of protecting investors, in part by imposing similar restrictions and reporting requirements." Friedlob, 905 F. Supp. at 855; accord Green, 19 F. Supp. 2d at 232; Merine, 859 F. Supp. at 720-21. Moreover, in adopting a one-year/three-year limitations period for an action for rescission under the Investment Advisers Act ("IAA"), the Second Circuit in Kahn v. Kohlberg, Kravis, Roberts & Co. noted that both the ICA and IAA were "enacted at the same time" and "impose similar requirements on investment advisers and investment companies and proscribe similar conduct." Id., 970 F.2d 1030, 1037 (2d Cir. 1992).

Following these precedents, an action for rescission accrues when the contract is executed. See id. at 1042. Here, the Advisory Agreement between Phoenix and SRC was executed on November 5, 1993. Phoenix alleges that the advisory contract between it and RHAC was executed in or around April 1996. Applying the longer limitations period of three years from the wrong, Phoenix must have brought its ICA claim against SRC by November 5, 1996 and against RHAC by April 1999. Because Phoenix waited until May 2005 to file its ICA claim, the claim is untimely.

Phoenix attempts to revive its ICA claim by arguing that the limitations period should not be predicated on the execution of the original Advisory Agreement with SRC but rather on the Amended Agreement negotiated in December 2002. See 11/22/2005 Transcript of Oral Argument on Motion to Dismiss ("Tr.") at 18-19. Alternatively, Phoenix asserts that a new ICA cause of action accrued in 2002 when SRC failed to register Phoenix under the Act after it amended its Articles of Association to allow U.S. residents to be shareholders. See id. at 20-21. Phoenix further argues that the two-year/five year statute of limitations provided for in the Public Company Accounting Reform and Investor Protection Act of 2002 ("Sarbanes-Oxley") is applicable here. Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 3 ("Pl.'s Opp'n Mem"). Should Sarbanes-Oxley govern, Phoenix goes on to argue that an action that accrues in 2002 would be timely before 2007. Sadly for Phoenix, its argument is unavailing.

First, the Amended Agreement on which Phoenix pins its hopes was never executed by SRC. Second, Phoenix cites no authority for its assertion that SRC was obligated to register Phoenix under the ICA after U.S. residents were allowed to be shareholders, nor have I found

7

any.² Finally, the Sarbanes-Oxley statute of limitations applies only to actions arising under the securities laws that "involve[] a claim of fraud, deceit, manipulation, or contrivance." 28 U.S.C. § 1658 (West 2005). Neither 15 U.S.C. Section 80a-46 nor any of the other sections of the ICA on which Phoenix's Section 80a-46 claim relies fall within this category. Accordingly, the Sarbanes-Oxley limitations period is not applicable to Phoenix's claim. Cf. In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003) (declining to apply Sarbanes-Oxley statute of limitations to claims that do not require a showing of fraudulent intent).

Phoenix finally argues that the applicable statute of limitations is tolled because the defendants concealed their misconduct and failed to disclose their conflicts of interest. The defendants respond that tolling does not apply because the one-year/three-year statute of limitations under the 1933 and 1934 Acts is a statute of repose.

Defendants are once again correct. The Supreme Court has stated that "the equitable tolling doctrine is fundamentally inconsistent" with the one-year/three-year statute of limitations of the 1933 and 1934 Acts. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991). The Court stated that the three-year limit is "a period of repose." Id. The Second Circuit has explained that a statute of repose, unlike a statute of limitations, "defines the right involved in terms of the time allowed to bring suit." P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102 (2d Cir. 2004). In other words, once the specified period of time has expired, the right is no longer available. See id. Therefore, a statute of repose runs without interruption once it is triggered and is not subject to equitable considerations. See id.

That prong of Defendants' motion to dismiss Phoenix's time barred ICA claim is granted.

**B.     Violations of the Investment Advisers Act of 1940**

Phoenix claims that SRC and RHAC engaged in fraudulent, deceptive, or manipulative acts in its dealings with Phoenix in violation of the IAA, specifically 15 U.S.C. Section 80b-6(1), 6(2), and 6(4). Phoenix further claims that the individual defendants aided and abetted SRC or

---

² 15 U.S.C. Section 80a-7(d) prohibits transactions in interstate commerce by "companies not organized under laws of the United States or a State" unless the Securities and Exchange Commission issues an order that permits that company to register under the ICA and "make a public offering of its securities by use of the mails and means or instrumentalities of interstate commerce." Id. (West 1997). If this is the authority that Phoenix depends on for its assertion, it is not applicable here because the complaint fails to allege that Phoenix made a public offering of its securities.

RHAC and received some of the fees paid to those entities.  Therefore, Phoenix seeks a rescission of its agreements with SRC and RHAC and restitution of all consideration paid to those entities and individual defendants pursuant to 15 U.S.C. Section 80b-15(b).

The Second Circuit has held that actions for rescission under the IAA are subject to the one-year/three-year statute of limitations applicable to various provisions of the 1933 and 1934 Acts.  See Kahn, 970 F.2d at 1038-39.  Consequently, as discussed in Section III.A supra, Phoenix's claims for rescission of the November 5, 1993 agreement with SRC and the April 1996 agreement with RHAC are untimely.

Phoenix again contends that 2002 is the proper time from which to calculate the running of the statute of limitations, for the same reasons given in its ICA claim, and asserts that the Sarbanes-Oxley two-year/five-year limitations period applies to its IAA claim.  As I explained in my discussion of the ICA claim, this argument is unavailing.  In light of this conclusion, even if the Sarbanes-Oxley limitations period were applicable here, it would not save Phoenix's claim.  Under that statute of limitations, Phoenix would have to file its IAA claim by the earlier of five years from the execution of the agreements or two years from discovery of the facts constituting the fraud.  Phoenix alleges that it did not discover any of the defendants' misconduct until after April 2004, and so it has until April 2006 to file its claim.  See Pl.'s Opp'n Mem. at 6, 10.  Clearly the earlier of the two-year/five-year limitations period is what governs, and using the five-year period, Phoenix would have been required to file for rescission of the SRC agreement on or before November 5, 1998, and for rescission of the RHAC agreement by April 2001.  Phoenix's complaint, filed in May 2005, fails to meet those time lines and this prong of the motion is granted.

**C.     Common Law Claims**

   **1.     Governing Law**

The parties dispute whether Phoenix has given adequate notice that Bahamian law applies to some of its common law claims.  Federal Rule of Civil Procedure 44.1 states: "A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonably written notice."  Id.  The 1966 Advisory Committee Notes point out that the notice "may, but need not be, incorporated in the pleadings."  Moreover, as an authoritative treatise has stated, "[t]he function of the notice is not to spell out the precise contents of foreign law but rather to inform the court and the litigants that it is relevant to the lawsuit."  Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure, § 2443 (2d ed. 1994). It is sufficient if the notice "specif[ies] the segment of the controversy thought to be governed by foreign law and identif[ies] the country whose law is claimed to control." Id.

Here, the complaint states that Phoenix was incorporated under the laws of The Bahamas and licensed as a mutual fund pursuant to the Bahamian Mutual Funds Act of 1995. Compl. ¶ 23. Further, the complaint gives notice that Bahamian law governs (i) the duties SRC and RHAC owed Phoenix as its investment adviser and administrator, id. ¶¶ 31-32; (ii) the applicable standard of care, id. ¶¶ 306-09; and (iii) the right to indemnification, id. ¶¶ 307-08, 322. These statements were more than sufficient to alert the defendants that Bahamian law is relevant to those claims that involve corporation law, specific duties owed by one party to another, standards of care, or indemnification. Therefore, Phoenix gave the defendants reasonable notice that Bahamian law governs its claims for breach of fiduciary duty, negligent misrepresentation, negligence, and declaratory relief that certain indemnification provisions in Phoenix's Articles of Association and the Advisory Agreement are void or voidable.[3]

Unlike those claims, however, common law fraud is not predicated on any of the legal provisions or standards referenced in the complaint. Consequently, the defendants could not reasonably have known that Phoenix intended Bahamian law to govern this claim, and New York law will govern. Phoenix specifies that its breach of contract claim is governed by New York law under the choice of law provisions in its contracts with SRC and RHAC. See Pl.'s Opp'n Mem. at 15 n.21.

### 2. **Breach of Fiduciary Duty**

Phoenix contends that the defendants owed a fiduciary duty to Phoenix as its directors, investment advisers, or administrator, and that they breached their fiduciary duty by engaging in acts that involved self-dealing or conflicts of interest.

Bahamian law imposes on directors, officers, and agents of a company the duty to "act honestly and in good faith with a view to the best interest of the company and exercise the care,

---

[3] Because Phoenix failed to discuss Bahamian law in its Opposition Brief despite its assertion that Bahamian law governs these claims, and because this Court has no ready access to Bahamian legal materials, I asked Phoenix on February 9, 2006 to provide the court with pertinent Bahamian law. In response, Phoenix addressed only Bahamian law governing the breach of fiduciary duty claim. Therefore, I assume that Bahamian law accords with New York law on the negligent misrepresentation and negligence claims. See Smith v. Soros, No. 02 Civ. 4229, 2003 WL 22097990, at *7, n.3 (S.D.N.Y. Sept. 5, 2003).

10

diligence and skill that a reasonably prudent person would exercise in comparable circumstances." Int'l Bus. Cos. Act of the Commonwealth of the Bahamas § 55 (2000). Bahamian law does not, however, prohibit directors of a company from voting on agreements or transactions in which they have an interest if "the material facts of the interest . . . are disclosed in good faith" and "the [a]greement or transactions is [sic] approved or ratified by a resolution of members." Id. § 57.

The defendants assert that Phoenix's breach of fiduciary duty claim fails because Phoenix has not alleged that the defendants' purported misconduct was concealed from Phoenix's Board. Under Bahamian law, however, the critical issue is whether the members of the corporation approved the conduct. It is therefore irrelevant whether the directors knew of the alleged misconduct. Moreover, the complaint does not state or imply that the entire Board was aware of the third party appraisals of Phoenix assets such as the Shoppes@IV, Seacourt Pavilion, or Westminster Mall, or that the independent directors were aware that SRC had entered into allegedly commercially unreasonable property management contracts with Phoenix. In addition, the complaint expressly alleges that SRC's payments to itself and RHAC after the April 2004 Board resolution to suspend payments to third parties were hidden from the Board. Accordingly, the defendants' motion to dismiss Phoenix's claim of breach of fiduciary duty is denied.

### 3. Common Law Fraud

To plead a claim for fraud under New York law, a plaintiff must allege the "misrepresentation of a material fact made with scienter that induces reliance to the detriment of the party to whom the misrepresentation is directed." Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 49 F. Supp. 2d 644, 655 (S.D.N.Y. 1999). Federal Rule of Civil Procedure 9(b) requires that allegations of fraud be pleaded with particularity, including an explanation of why a representation is fraudulent. See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 187 (2d Cir. 2004). As to scienter, this Circuit requires plaintiffs to allege either (i) "facts to show that defendants had both motive and opportunity to commit fraud," or (ii) "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230, 2003 WL 21088506, at *6 (S.D.N.Y. May 14, 2003).

#### a. SRC

The parties focus on four alleged misrepresentations by SRC: (i) Schack's statement that

Houlihan had valued Insurent at $70 million; (ii) Schack's report that SRC had obtained an independent valuation for Phoenix's South Brunswick square asset; (iii) SRC's representations in the February 5, 2004 letter to the Phoenix Board; and (iv) the December 27, 2002 representation by Schack and Van Pelt that Phoenix's payment of $848,000 to SRC was on account of fees two years past due when they knew that SRC was not entitled to any payment at that time.

The first three representations fail to support Phoenix's fraud claim. Phoenix fails to establish how the first statement was material in light of its allegation that the Board approved a $57 million value for Phoenix's interest in Insurent based on Schack's later report that Houlihan and BDO had valued the asset at this figure. Phoenix fails to allege with particularity how the next two statements were fraudulent. It claims that no "truly independent valuation" had been obtained for the South Brunswick Square asset, but does not explain why the valuation was not "truly" independent. As to the letter, Phoenix only asserts conclusorily that "[e]ach of these statements was false and misleading."

The last statement has, however, been properly pled. In addition to specifying "who, what, and when," Phoenix has alleged that Schack and Van Pelt had a fraudulent motive because they benefited from fees paid to SRC. I am aware that the receipt of professional fees alone is generally held insufficient to support a claim of fraud. See Duncan v. Pencer, No. 94 Civ. 0321, 1996 WL 19043, at *9 (S.D.N.Y. Jan. 18, 1996). The rationale for this rule is that professionals will not be deemed to risk their reputations for a fee that represents a small percentage of their incomes. See id. at *10. Here, however, Phoenix has alleged that it was SRC's sole client. Consequently, the Duncan rationale does not apply and I am reluctant, under the facts here, to hold that the receipt of fees fails to provide a sufficient motive for fraud.

The defendants' motion to dismiss the common law fraud claim against SRC, Schack, and Van Pelt is denied.

        b.     **RHAC**

Phoenix alleges the following misrepresentations by RHAC: (i) participation in inflating the value of Phoenix assets that were under SRC management; (ii) Arnold's failure to call to FTI's attention the lower fees to which SRC had agreed in the Amended Agreement; and (iii) the failure to disclose that RHAC had an interest in Insurent prior to causing Phoenix to enter into contracts to acquire an interest in the same entity.

The first ground fails for lack of particularity in alleging that RHAC was aware that the

assigned values were inflated—the complaint states only that RHAC modeled the cash flows that were used by SRC and the Board to value Phoenix's assets. Next, Phoenix fails to establish how an omission to a third party, FTI, can support a claim of fraud by Phoenix. A third party may recover for fraud "if he can establish that he relied upon [a misrepresentation] to his detriment and that the defendant intended the misrepresentation to be conveyed to him." Sec. Investor Prot. Corp., 49 F. Supp. 2d at 655. The complaint fails to allege that Phoenix relied on Arnold's misrepresentation or that Arnold intended his omission to be conveyed to Phoenix. Finally, the complaint itself contradicts Phoenix's third allegation because it states that the acquisition of interests in Insurent by SRC and RHAC was disclosed in the Insurent agreements themselves.

Therefore, the common law fraud claim is dismissed against Arnold and RHAC.

### 4. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must establish that "the defendant had a duty to use reasonable care to convey correct information due to the existence of a 'special relationship,' that the information provided was incorrect or false, and that the plaintiff reasonably relied upon the information." Citibank, N.A. v. Itochu Int'l Inc., No. 01 Civ. 6007, 2003 WL 1797848, at *5 (S.D.N.Y. Apr. 4, 2003). Allegations of negligent misrepresentation must comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). See Siemens Westinghouse Power Corp. v. Dick Corp., 293 F. Supp. 2d 336, 343 (S.D.N.Y. 2003).

The "special relationship" element is met by Phoenix's allegations that the defendants were Phoenix's fiduciaries. Phoenix's negligent misrepresentation claim is, however, based on the same factual allegations as its fraud claim, and suffers from the same deficiencies in pleading. See Section III.C.3 supra. Accordingly, my decisions as to Phoenix's fraud claim apply equally to its negligent misrepresentation claim, and defendants' motion to dismiss this claim is denied as to SRC but granted as to RHAC.

### 5. Breach of Contract

In a breach of contract claim, a plaintiff must "plead the provisions of the contract upon which the claim is based." Window Headquarters, Inc. v. MAI Basic Four, Inc., Nos. 91 Civ. 1816, 92 Civ. 5283, 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (quoting Griffin Bros., Inc. v. Charles Yatto, 415 N.Y.S.2d 114 (N.Y. App. Div. 1979)). The complaint must "set forth the terms of the agreement upon which liability is predicated, either by express reference or by attaching a copy of the contract." Id. (quoting Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.,

13

514 N.Y.S.2d 1002, 1003 (N.Y. App. Div. 1987)).

### a. SRC

Phoenix has attached a copy of the 1993 Advisory Agreement to its complaint. Phoenix has also alleged that SRC breached this Agreement by: (i) paying itself $848,000 in performance fees to which it was not entitled; (ii) causing Phoenix to indirectly pay SRC's rent, legal fees, and other expenses; and (iii) failing to comply with the provisions of Bahamian law that were implied terms of the Agreement, such as reporting inflated values for Phoenix's assets, causing Phoenix to approve indemnity agreements, and failing to keep accurate records and provide them to the new Board. These allegations sufficiently plead a breach of the Advisory Agreement.

As to the Amended Agreement, however, Phoenix admits that SRC never signed the amendment although the original Advisory Agreement required all alterations and amendments to be in a writing signed by both parties. Further, even if there were an agreement, it would be void under the Statute of Frauds. In New York, "contracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds." Computech Int'l, Inc. v. Compaq Computer Corp., No. 02 Civ. 2628, 2002 WL 31398933, at *3 (S.D.N.Y. Oct. 24, 2002) (collecting cases). Phoenix concedes that the Amended Agreement revised only the compensation provisions of the original Advisory Agreement. See Pl.'s Opp'n Mem. at 25. Therefore, the term of the Amended Agreement was the same as in the Advisory Agreement, and that term was for an indefinite period. Consequently, the Amended Agreement would be unenforceable under the Statute of Frauds and there was no agreement that could have been breached.

The motion to dismiss Phoenix's breach of contract claim against SRC is denied as to the Advisory Agreement but granted as to the Amended Agreement.

### b. RHAC

Phoenix has not attached a copy of the agreement with RHAC to the complaint, nor has it set forth the terms of the agreement on which liability for breach of contract is predicated. Phoenix has stated only that RHAC provided assistance with the valuation of Phoenix assets, but has not expressly alleged that this service was a term of the agreement.[4] Therefore, Phoenix has

---

[4] Indeed, to the extent that the complaint alleges that the RHAC agreement was never submitted to Phoenix's Board or members for approval, it is questionable whether there was a valid agreement.

failed to properly plead its breach of contract claim against RHAC. The defendants' motion to dismiss this claim is granted.

   6.   **Negligence**

Allegations of negligence need meet only the requirements of Federal Rule of Civil Procedure 8(a). See In re Initial Pub. Offering Sec. Litig., 241 F. Supp. 2d 281, 322-23 (S.D.N.Y. 2003).

The Advisory Agreement absolves SRC, its directors, and officers from liability for negligence in connection with the performance of the agreement. See Advisory Agreement, Ex. 1 to Compl., art. VI. Phoenix alleges that the RHAC agreement has the same clause. Compl. ¶ 237. Because such provisions are enforceable in New York, Phoenix's claim of negligence against SRC, RHAC, their directors, and officers are dismissed insofar as the alleged conduct was in connection with performance of the agreements. See Am. Motorist Ins. Co. v. Morris Goldman Real Estate Corp., 277 F. Supp. 2d 304, 307 (S.D.N.Y. 2003). Phoenix's allegations of negligent conduct by SRC, Shack, Van Pelt, and Arnold that occurred outside the performance of the agreements are adequately pleaded and survive this motion to dismiss.[5] Phoenix has not alleged any such acts of negligence as to RHAC, however, so this claim is dismissed as to that defendant.

   7.   **Declaratory Relief**

Phoenix seeks a declaration that certain indemnification provisions in Phoenix's Articles of Association, the Advisory Contract, and other agreements are void or voidable as violative of Bahamian law. Setting aside the question of whether this issue is ripe for adjudication, Phoenix has failed to provide the specific Bahamian law it claims is violated despite this Court's request for it to do so. I decline to entertain a demand for declaratory relief in the absence of the law that purportedly governs the parties' rights. The defendants' motion to dismiss Phoenix's request for declaratory relief is granted.

---

[5] These allegations are summarized in Phoenix's opposition brief, with citations to the complaint. See Pl.'s Opp'n Mem. at 33.

## IV. CONCLUSION

The defendants' motion to dismiss Phoenix's federal claims is granted. The motion to dismiss the following common law claims is denied: (i) breach of fiduciary duty against all defendants; (ii) fraud against SRC, Schack, and Van Pelt; (iii) negligent misrepresentation against SRC, Schack, and Van Pelt; (iv) breach of contract against SRC as to the Advisory Agreement; and (v) negligence against all defendants but RHAC. The motion to dismiss the following common law claims is granted: (i) fraud against all defendants but SRC, Schack, and Van Pelt; (ii) negligent misrepresentation against all defendants but SRC, Schack, and Van Pelt; (iii) breach of contract against SRC as to the Amended Agreement and against RHAC; and (iv) negligence against RHAC. The motion to dismiss Phoenix's request for declaratory relief is granted. Phoenix may cure the deficiencies in its complaint, if it chooses, by filing an amended complaint within 20 days from the date hereof. Trial on the surviving claims is set for July 2006. Fully briefed dispositive motions, if any, are due on or before May 10, 2006. The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**February 21, 2005**

U.S.D.J.