ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/23/2006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PHOENIX FOUR, INC.,

                Plaintiff,

                - against-

STRATEGIC RESOURCES CORPORATION,
PAUL SCHACK, CHRISTIAN M. VAN PELT,
JAMES J. HOPKINS III, ROBERT H. ARNOLD,
R.H. ARNOLD & CO. INCORPORATED,
JOEL G. SHAPIRO, and JGS ADVISORS LLC,

                Defendants.
-----------------------------------------------------------X

No. 05 CIV. 4837 (HB)

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., District Judge:**

    Plaintiff Phoenix Four, Inc. ("Phoenix") brings this action against Strategic Resources Corporation ("SRC"), Paul Schack, Christian M. Van Pelt, James J. Hopkins III, Robert H. Arnold, and R.H. Arnold & Company, Inc. ("RHAC") alleging, inter alia, breach of fiduciary duty, common law fraud, and negligent misrepresentation.[1] Presently before the court is Phoenix's motion for sanctions against SRC, Schack, Van Pelt, and Hopkins (collectively the "SRC Defendants") and their counsel Mound Cotton Wollan & Greengrass ("Mound Cotton") for destruction and late production of evidence.[2] Phoenix urges that the court impose the following sanctions: (i) an adverse inference instruction; (ii) that the SRC Defendants be precluded from making a summary judgment motion; (iii) sanctions under Federal Rule of Civil Procedure 37(c)(1); (iv) monetary sanctions; and (v) any other sanctions the court deems appropriate. For the reasons set forth below, Phoenix's motion for sanctions is GRANTED in part and DENIED in part.

## I. BACKGROUND

    Phoenix is an investment company incorporated in the Commonwealth of the Bahamas in

---

[1] Although Phoenix also names Joel G. Shapiro and JGS Advisors LLC as defendants, no specific claims are alleged against them and they have not appeared in this action.

[2] Phoenix excludes Arnold and RHAC from this motion and states that it does not intend for this motion to affect them. See Pl.'s Reply to Arnold Defs.' Mem. of Law at 1.

1

1993.³ Compl. ¶ 23. SRC, a New York corporation, was Phoenix's investment adviser. Am. Compl. ¶ 10. Schack, Van Pelt, and Hopkins were founders, shareholders, officers, and directors of SRC and members of Phoenix's Board of Directors. Id. ¶¶ 11-13. Phoenix was SRC's sole client. Id. ¶ 28. On March 6, 2003, Paul Knowles, Vice President of Phoenix, notified one of Phoenix's insurance carriers that Phoenix's Board had voted to suspend the redemption of shares but that no claims had been filed against Phoenix. See 3/6/2003 Knowles Letter, Ex. I to 4/20/2006 Aff. of Maureen McGuirl ("McGuirl Aff."), Counsel to Phoenix, in Supp. of Mot. for Sanctions. On May 5, 2003, Knowles wrote to another of Phoenix's insurers that "several shareholders [had] retained outside counsel and indicated that they [were] considering means of enforcing their legal rights." 10/11/2005 Letter from Wiley Rein & Fielding LLP, Counsel to Federal Insurance Co., Ex. J to McGuirl Aff. (quoting 5/5/2003 letter from Knowles).⁴ Prior to April 21, 2004, SRC gave notice to its insurance company that a dispute existed between it and Phoenix. See 02/08/2006 Dep. Tr. of Christian M. Van Pelt ("Van Pelt Tr."), Ex. M to McGuirl Aff., at 97:8-24.⁵ In April or May 2004, Phoenix stopped paying fees to SRC and SRC ceased operations shortly thereafter. See 04/28/2006 Aff. of Paul Schack in Opp'n to Mot. for Sanctions ("Schack Aff.") ¶¶ 6-7. Between August and October 2004, SRC delivered to Phoenix and its representatives all paper records that belonged to it. See id. ¶ 18. Between August and September 2004, SRC transferred all of Phoenix's electronic accounting records to Phoenix's designated accounting representatives. See id. ¶ 19.

Sometime in February or March 2005, SRC's landlord commenced proceedings to evict SRC from its offices in Carnegie Hall Towers, New York. See 04/11/2006 Dep. Tr. of Paul Schack ("Schack Tr."), Ex. K to McGuirl Aff., at 37:21-24. SRC vacated its office space on or about March 31, 2005, prior to the commencement of this lawsuit. See Schack Aff. ¶ 9. When the SRC Defendants moved out of Carnegie Hall Towers, they left behind Phoenix marketing

---

³ The court assumes familiarity with the background facts relating to the parties and the events leading up to the current litigation as set forth in Phoenix Four, Inc. v. Strategic Resources Corp., No. 05 Civ. 4837, 2006 WL 399396 (S.D.N.Y. Feb. 21, 2006) (granting in part and denying in part the defendants' motion to dismiss the complaint).

⁴ Phoenix did not submit a copy of the original May 5, 2003, letter from Knowles.

⁵ At his deposition, Van Pelt testified that SRC gave notice of the dispute "before [he] resigned from the Phoenix Four board." Van Pelt Tr., Ex. M to McGuirl Aff., at 97:8-24. Van Pelt resigned as a Director of Phoenix on April 21, 2004. See 04/21/2004 Minutes of Meeting of Directors of Phoenix, Ex. N to McGuirl Aff., at PF H 00253.

documents, old prospectuses, and trade publications. See Schack Tr. at 31:6-11. They also left behind at least ten computer workstations. See id. at 35:19-37:7. SRC's landlord subsequently disposed of the abandoned documents and computers. See id. at 76:8-19. Schack did not recall discussing with Van Pelt, Hopkins, or anyone else whether the workstations contained Phoenix-related material prior to abandoning them. See id. at 44:8-21. By that time, SRC's technical specialist had already left SRC's employ. See id. at 43:9-23.

The SRC Defendants took with them from Carnegie Hall Towers about fifty boxes containing business records pertaining to SRC and Phoenix, two servers, and at least two computer workstations. See id. at 33:13-34:5, 35:8-13, 37:25-38:9; Schack Aff. ¶ 15-16. Schack, who subsequently started a new business venture, housed these items in his new office and used at least one of the servers in his new business. See Schack Tr. at 33:13-34:5, 35:8-14; Schack Aff. ¶¶ 21-22.

On May 19, 2005, Phoenix filed its first complaint against SRC in the instant action. See Docket Report ("Dkt.") 1. Prior to and immediately following receipt of Phoenix's first set of document demands in August 2005, Mound Cotton, counsel to the SRC Defendants, discussed with them the need to locate and gather pertinent paper and electronic documents. See 5/1/2006 Decl. of Sanjit Shah, Counsel to SRC Defendants, in Opp'n to Mot. for Sanctions ("Shah Decl.") ¶ 28. Schack and Hopkins searched the computer system in Schack's new office and informed Mound Cotton that they had failed to locate any electronic files or folders that pertained to Phoenix or SRC. See Schack Aff. ¶ 29. They did not search the servers, however, as Schack was unaware that there was any pertinent information on them. See Schack Tr. at 42:5-16. The SRC Defendants also advised Mound Cotton that "because SRC was no longer in operation, there were no computers or electronic document collections to look through or search." Shah Decl. ¶ 33. Mound Cotton attorneys reviewed hard copy materials made available by the SRC Defendants and subsequently produced these documents, about fifty boxes in all, to Phoenix in December 2005. See Shah Decl. ¶ 34; 5/15/2006 Tr. of Oral Argument on Mot. for Sanctions ("Oral Argument Tr.") at 37:10-14.

Around late February or early March 2006, a freelance computer technician, Peter Pinti, made a service call to Schack's office in response to complaints about a malfunctioning server. See 4/26/2006 Aff. of Peter Pinti in Opp'n to Mot. for Sanctions ("Pinti Aff.") ¶¶ 2-3; Schack Aff. ¶ 31. This server was one of the two that the SRC Defendants had taken with them from

3

SRC's Carnegie Hall Towers office. See Schack Tr. at 312:19-25. After directly accessing the hard drive on the server, Pinti discovered about 25 gigabytes of data—as much as 2500 boxes—stored in a dormant, partitioned section of the server. See Pinti Aff. ¶¶ 4-5; Shah Decl. ¶ 2. The computer system in Schack's office was configured in such a way that the desktop workstations did not have a "drive mapping" to that partitioned section of the hard drive. See Pinti Aff. ¶ 7. In other words, "someone using a computer connected to that server could not 'view' or gain access to that section of the hard drive and would have no way of knowing of its existence." Id. ¶ 8. Schack immediately contacted his attorneys and was instructed to download the information and deliver it to them. See Schack Aff. ¶ 34. A few days later, Schack asked Pinti to back up the data. See Pinti Aff. ¶ 9. Pinti first downloaded the data onto DLT tapes but Mound Cotton's technology vendor was unable to extract the data from the tapes. See id. ¶ 11. On March 13 or 14, Pinti again downloaded the data onto DVDs. See id. ¶ 12. The deadline for discovery set in the pre-trial scheduling order for this case was March 12, 2006. See Dkt. 27.

Mound Cotton received the DVDs on March 15, 2006, and tried to review the documents quickly for privilege, relevance, and responsiveness. See Shah Decl. ¶ 5. On March 20, 2006, Mound Cotton alerted Phoenix to the recently discovered documents and advised that it would inform Phoenix of the nature of the documents "as soon as [it] knew more about [them]." Id. ¶ 7. Between March 20 and April 10, 2006, counsel for Phoenix and the SRC Defendants met almost daily at depositions being taken in the case and discussed the status of the production. See McGuirl Aff. ¶ 8. They also corresponded about the production. See Mound Cotton Letters, Ex. C & E to McGuirl Aff.; 4/10/2006 Letter from Fensterstock & Partners, Counsel to Phoenix, Ex. F to McGuirl Aff. On April 10, 2006, SRC responded to Phoenix's prior discovery requests that all responsive documents had been produced. See 4/10/2006 SRC Discovery Responses, Ex. H to McGuirl Aff. at 3-5. On April 12, 2006, Mound Cotton informed Phoenix that it would produce the documents in "TIFF" format but Phoenix rejected that format. See McGuirl Aff. ¶ 10. On April 13, 2006, Mound Cotton told Phoenix that it would provide the documents in an electronically searchable "Case Vault" format. See id. ¶ 11. Phoenix did not respond to this offer. See Shah Decl. ¶ 20.

Phoenix filed this motion for sanctions on April 20, 2006. See Dkt. 62 (referencing document filed under seal). On April 21, 2006, Mound Cotton requested a telephone conference with the court. At the conference on April 24, 2006, Phoenix agreed to accept the recently

4

discovered documents in hard copy. Mound Cotton confirmed that it would roll out the production, estimated to be 200-300 boxes, beginning on April 26, 2006. By that time, Phoenix had taken the depositions of Schack, Van Pelt, and Hopkins. See McGuirl Aff. ¶ 15.

## II. AUTHORITY FOR IMPOSING SANCTIONS

A court has the authority to impose sanctions on a party for spoliation[6] and other discovery misconduct under its inherent power to manage its own affairs or under Rule 37 of the Federal Rules of Civil Procedure. See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002); Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 640 (1976)). Where the alleged discovery misconduct consists of the non-production of evidence, a district court has broad discretion to fashion appropriate sanctions on a case-by-case basis. See Residential Funding Corp., 306 F.3d at 107; Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). The sanctions imposed should serve the threefold purposes of deterring parties from engaging in spoliation, placing the risk of an erroneous judgment on the party who wrongfully created the risk, and restoring the prejudiced party to the position it would have been in had the misconduct not occurred. See West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).

## III. DISCUSSION

### A. Adverse Inference Instruction

A party that seeks an adverse inference instruction for destruction or late production of evidence must show that: (i) the party having control over the evidence had an obligation to preserve or timely produce it; (ii) the party that destroyed or failed to timely produce evidence had a "culpable state of mind"; and (iii) the missing or tardily produced evidence is "relevant" to the party's claim or defense "such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding Corp., 306 F.3d at 107; Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Zubulake IV"). "The obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd., 247 F.3d

---

[6] Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).

5

at 436. The "culpable state of mind" requirement is satisfied in this circuit by a showing of ordinary negligence. Residential Funding Corp., 306 F.3d at 101. "Relevance" may be inferred from a showing that a party acted in bad faith because "bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Id. at 109. In some circumstances, such an inference may be drawn from a showing of gross negligence alone. See id. Where only ordinary negligence is established, however, the party moving for an adverse inference instruction must prove relevance. See Zubulake IV, 220 F.R.D. at 220. The movant may do so by adducing "sufficient evidence from which a reasonable trier of fact could infer that the destroyed [or unavailable] evidence would have been of the nature alleged by the [movant]," i.e. supportive of the movant's claims or defenses. Residential Funding Corp., 306 F.3d at 109 (citations and internal quotation marks omitted). Courts should be careful not to hold the movant to "too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence" however, lest the spoliator profits from its misconduct. Id.

An adverse inference instruction is a severe sanction that often has the effect of ending litigation because "it is too difficult a hurdle for the spoliator to overcome." Zubulake IV, 220 F.R.D. at 219. Accordingly, this sanction "should not be given lightly." Id. at 220.

### 1. **Abandonment of Evidence**

Phoenix first seeks an adverse inference instruction against the SRC Defendants for abandoning hard copy documents and computer workstations at their Carnegie Hall Towers office. It contends that the defendants had an obligation to preserve these abandoned items because they should have known that the evidence might be relevant to the potential shareholder litigation referenced in Knowles' letter to Phoenix's insurer or to the dispute between SRC and Phoenix about which SRC notified its insurer. It is a pity that we do not have copies of the actual notices, but these references to future litigation, while thin, are adequate to support a finding that the SRC Defendants were obligated to preserve the abandoned evidence. As directors of Phoenix and officers of SRC, the individual defendants knew or should have known that the prospect of litigation was very real. Moreover, given that SRC was Phoenix's investment adviser and that Phoenix was SRC's sole client, it is beyond peradventure that the abandoned items contained relevant information.

Despite notice of pending litigation, however, the SRC Defendants abandoned at least ten

6

computer workstations without bothering to make any search whatsoever in order to discover whether they contained Phoenix-related information. Their indifference constituted an act of gross negligence that is not excused by the disarray of their business affairs. Cf. Barsoum v. NYC Hous. Auth., 202 F.R.D. 396, 400 (S.D.N.Y. 2001) (leaving tape on desk in area open to passers-by despite notice that tape was needed to respond to discovery requests, resulting in its loss, was "at the very least grossly negligent").

Nonetheless, because actual notices of the pending litigations are unavailable, and because of the upheaval in the defendants' business, I do not find this instance to be one in which gross negligence alone supports an inference that the abandoned evidence was unfavorable to the SRC Defendants. Therefore, Phoenix must establish that a reasonable trier of fact could find that the abandoned evidence would have supported its claims or defenses. Phoenix has failed, at least to date, to adduce any evidence that meets this standard, and it admits, understandably, that it "will never know whether there were favorable documents contained in the materials that the SRC Defendants destroyed." Pl.'s Mem. in Supp. of Mot. for Sanctions at 18. Accordingly, Phoenix has failed to show that an adverse inference instruction is warranted for the SRC Defendants' abandonment of evidence.

### 2. Late Production of Electronic Documents

Phoenix also seeks an adverse inference instruction for the failure of the SRC Defendants and Mound Cotton to conduct a reasonable and timely inspection of computers and servers in the defendants' possession in December 2005, resulting in the late discovery and production of 200-300 boxes of documents. By this time, everyone concerned knew of their obligation to timely produce evidence because Phoenix had filed its complaint in this action and served the SRC Defendants with discovery requests.

As to Mound Cotton's obligation, Judge Scheindlin has defined the contours of counsel's duty to locate relevant electronic information in Zubulake v. UBS Warburg LLC, 229 F.R.D. 422 (S.D.N.Y. 2004) ("Zubulake V"). Counsel has the duty to properly communicate with its client to ensure that "all sources of relevant information [are] discovered." Id. at 432. To identify all such sources, counsel should "become fully familiar with [its] client's document retention policies, as well as [its] client's data retention architecture." Id. This effort would involve communicating with information technology personnel and the key players in the litigation to understand how electronic information is stored. See id.

7

Mound Cotton failed in its obligation to locate and timely produce the evidence stored in the server that the SRC Defendants took with them from Carnegie Hall Towers. Mound Cotton affirms that it engaged in dialogue with the defendants on the need to locate and gather paper and electronic <u>documents</u>. Indeed, when repeatedly questioned at oral argument on what inquiries it had made to discover electronic evidence, Mound Cotton reiterated that it had asked the defendants for all electronic and hard copy <u>documents</u>. <u>See</u> Oral Argument Tr. at 36:13-14. But counsel's obligation is not confined to a request for documents; the duty is to search for <u>sources</u> of information.

It appears that Mound Cotton never undertook the more methodical survey of the SRC Defendants' sources of information that Judge Scheindlin outlined in <u>Zubulake V</u>. Mound Cotton simply accepted the defendants' representation that, because SRC was no longer in operation, there were no computers or electronic collections to search. Had Mound Cotton been diligent, it might have asked—as it should have—what had happened to the computers SRC used at Carnegie Hall Towers. This question alone would have alerted Mound Cotton to the existence of the server that the defendants had taken with them from their former office. Further, Mound Cotton's obligation under <u>Zubulake V</u> extends to an inquiry as to whether information was stored on that server and, had the defendants been unable to answer that question, directing that a technician examine the server. In the case of a defunct organization such as SRC, this forensic effort would be no more than the equivalent of questioning the information technology personnel of a live enterprise about how information is stored on the organization's computer system.

I emphasize that the duty in such cases is not to retrieve information from a difficult-to-access source, such as the server here,[7] but rather to ascertain whether any information is stored there. In reaching this determination, I am guided by the proposed amendments to Federal Rule of Civil Procedure 26, which become effective in December of this year. Proposed Rule 26(a) requires parties to disclose "a description by category and location of . . . electronically stored information." Pending Rules Amendments, http://www.uscourts.gov/rules/newrules6.html. at

---

[7] The Introduction to the proposed amendments to Rule 26(b)(2) identifies as a difficult-to-access source "legacy data that remains from obsolete systems and is unintelligible on the successor systems." Pending Rules Amendments,http://www.uscourts.gov/rules/newrules6.html. at 40. The information on the server in this case, which is in a partitioned section of the hard drive and not accessible from Schack's newly configured computer system, fits squarely within this description.

8

28. Proposed Rule 26(b)(2) reinforces the concept that a party must identify even those sources that are "not reasonably accessible," but exempts the party from having to provide discovery from such sources unless its adversary moves to compel discovery. Id. at 43-44. The proposed amendments essentially codify the teaching of Zubulake IV & V, of which Mound Cotton should have been well aware. I find Mound Cotton's deficiencies here to constitute gross negligence. Cf. Hous. Rights Ctr. v. Sterling, No. 03 Civ. 859, 2005 WL 3320739, at **3, 7 (C.D. Cal. March 2, 2005) (finding that counsel's failure to verify with client whether there was an e-mail backup system "cannot be countenanced," and that failure to search back-up tapes owing to "honest miscommunication" between client and counsel as to whether such tapes existed "was at least grossly negligent"). For their part, the SRC Defendants were at the least negligent in carelessly representing to counsel that "there were no computers . . . to search" when they knew that they still possessed, and were actually using at least one of, the servers from Carnegie Hall Towers.

It is not necessary to consider whether "relevance" may be inferred from gross negligence here, since Phoenix has adduced sufficient evidence to convince me that the recently discovered documents will support its claims. Having reviewed some of the evidence retrieved from the server, Phoenix attests that net asset value models, cash flow charts, Board resolutions, and asset management reports are part of that production. See List of Responsive Documents by Topic, Ex. B to 5/3/2006 Decl. of Julie A. Turner, Counsel to Phoenix, in Further Supp. of Mot. for Sanctions. These documents are central to Phoenix's breach of fiduciary duty, fraud, and other claims in this action.

Although Phoenix has established the elements necessary for an adverse inference instruction, I find that such a severe sanction is not warranted here where the SRC Defendants have come forward with the evidence, even if after the close of discovery. See Convolve, Inc. v. Compaq Computer Corp., 223 F.R.D. 162, 169-70 (S.D.N.Y. 2004) (holding that appropriate remedy for failure to produce certain documents and misrepresentation that such documents did not exist was full disclosure of relevant information, not sanctions); Liafail, Inc. v. Learning 2000, Inc., Nos. C.A. 01-599 & C.A. 01-678, 2002 WL 31954396, at *4 (D. Del. Dec. 23, 2002) (finding adverse inference instruction warranted for conflicting testimony as to existence of evidence, but allowing party to correct its wrongs by producing relevant documents before imposing sanctions); Williams v. Saint-Gobain Corp., No. 00 Civ. 502, 2002 WL 1477618, at *2

(W.D.N.Y. June 28, 2002) (holding that there was no basis for adverse inference instruction for failure to produce e-mails until five days before trial to extent that they had been produced, absent showing of bad faith). Phoenix's motion for an adverse inference instruction based on the SRC Defendants' late production of evidence is denied.

## B. Preclusion of Summary Judgment Motion

Phoenix argues that the SRC Defendants should be barred from filing a motion for summary judgment because courts have found that an adverse inference instruction would preclude the culpable party from prevailing on such a motion. It also contends that it would be prejudiced by having to oppose a motion for summary judgment when substantial evidence has not yet been produced.

Phoenix's first argument is inapplicable as I have denied Phoenix's demand for an adverse inference instruction. As to its second argument, I gave Phoenix the opportunity at oral argument to request that the trial be adjourned. See Oral Argument Tr. at 26:6-23. Phoenix opted to proceed under the original pre-trial scheduling order that calls for a trial in July, and it recognized that it was forfeiting its prejudice argument. See id. 43:18-44:3. Consequently, while tempting, Phoenix's demand that the SRC Defendants be precluded from filing a summary judgment motion is denied.

## C. Rule 37 Sanctions

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides: "A party that without substantial justification fails to disclose information required by Rule 26(a)[8] or 26(e)(1),[9] or to amend a prior response to discovery as required by Rule 26(e)(2),[10] is not, unless such failure is

---

[8] Rule 26(a) governs disclosures, including initial disclosures, disclosure of expert testimony, and pretrial disclosures. Among the required initial disclosures are "a copy of, or a description by category and location, of all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the party may use to support its claims or defenses, unless solely for impeachment." Fed. R. Civ. P. 26(a)(1)(B).

[9] Rule 26(e)(1) requires a party to supplement any disclosures or responses to requests for discovery if the party learns that its disclosures or responses were materially incorrect or incomplete and if the other parties have not already been made aware of the additional or corrective information through the discovery process or in writing.

[10] Rule 26(e)(2) requires a party to seasonably amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is materially incomplete or incorrect and if the other parties have not already been made aware of the additional or corrective information through the discovery process or in writing.

10

harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." In addition to or instead of this preclusion sanction, a court, on motion, may impose other sanctions such as "requiring payment of reasonable expenses, including attorney's fees, caused by the failure" and "any of the sanctions authorized under Rule 37(b)(2)(A), (B), and (C)."[11] Fed. R. Civ. P. 37(c)(1).

Phoenix requests the following sanctions under Rule 37(c)(1): (i) an order precluding the SRC Defendants from raising certain claims and defenses because they have failed to produce sufficient supporting documents; (ii) an order precluding the SRC Defendants from submitting any dispositive motions or asserting any defenses that cite to, or rely on, information contained in the recently retrieved documents; and (iii) an order deeming admitted the facts contained in Phoenix's First Request for Admissions.

### 1. **Preclusion**

Some courts in this Circuit consider the preclusion remedy under the first part of Rule 37(c)(1) to be discretionary. See, e.g., Martinez v. Port Auth. of New York and New Jersey, No. 01 Civ. 721, 2005 WL 2143333, at *14 (S.D.N.Y. Sept. 2, 2005) (Castel, J.) (noting that many courts in this District require a showing of "flagrant bad faith" and "callous disregard" of the Federal Rules before resorting to preclusion). In contrast, other courts deem the sanction to be mandatory. See, e.g., Design Strategies, Inc. v. Davis, 367 F. Supp. 2d 630, 634 (S.D.N.Y. 2005) (Marrero, J.) (collecting cases holding that preclusion is "automatic absent a determination of either substantial justification or harmlessness") (citations and internal quotation marks omitted). The Second Circuit has not ruled on this debate. See Hein v. Cuprum, S.A., 53 Fed. Appx. 134, 137 n.1 (2d Cir. 2002) (declining to express opinion as to whether a showing of bad faith is required for preclusion under Rule 37(c)(1)).

The facts here do not compel me to enter the fray as, even under the more stringent "substantial justification or harmlessness" standard, I find that preclusion is not warranted. Since

---

[11] Rule 37(b)(2) authorizes a court to issue, as sanctions for disobeying discovery orders, the following orders: (A) "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order"; (B) "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence"; and (C) "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

11

Phoenix filed its motion for sanctions, the SRC Defendants have produced 200-300 boxes of documents retrieved from the server to Phoenix on a rolling basis. Hence, to the extent the harm Phoenix complains of arises from the non-production of documents, that objection is now moot. Moreover, to the extent that Phoenix is harmed by having to review these documents in a compressed time frame, it has brought this ill on itself by eschewing the cure of adjourning the trial.

### 2. Admission of Facts

Phoenix maintains that the SRC Defendants should be deemed to have admitted certain facts because they misrepresented on April 10, 2006, that they had produced all responsive documents when they knew that the documents discovered in the server had not been produced. At that time, however, Phoenix was well aware that additional documents existed, and that Mound Cotton was readying those documents for production. Indeed, between March 20 and April 10, 2006, counsel for Phoenix and the SRC Defendants were in almost daily contact about the production of the newly found documents. While Mound Cotton's discovery responses were unfortunately worded, to say the least, Phoenix's contention that the responses were deliberately misleading is a legalistic fiction.

Phoenix's motion for sanctions under Rule 37(c)(1) is denied.

### D. Monetary Sanctions

Even when a court denies other requested relief, it may still impose monetary sanctions for spoliation and other discovery misconduct. See Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 77 (S.D.N.Y. 1991). Costs for which the party that requests sanctions may be compensated arise "either from the discovery necessary to identify alternative sources of information . . . or from the investigation and litigation of the document destruction itself." Id. at 78. When the misconduct is late production of evidence, compensable costs may also arise from the need to re-depose witnesses. See Zubulake IV, 220 F.R.D. at 222.

Phoenix requests the following monetary sanctions: (i) costs, including attorneys' fees, associated with bringing this motion; (ii) $200,000 in costs for converting the recently discovered documents into a searchable format and for the burden of reviewing these documents late in the game; and (iii) $25,000 each for re-deposing Schack, Van Pelt, and Hopkins.

The discovery delinquencies of the SRC Defendants and their counsel have resulted in the late production of 200-300 boxes of documents—at least four times as much as the fifty

12

boxes originally produced—which has severely disrupted the progress of this litigation in the last two months before trial, a trial date, by the way, to which all parties agreed at the pre-trial conference. I find that monetary sanctions will most appropriately serve the prophylactic, punitive, and remedial purposes of discovery sanctions. The SRC Defendants and Mound Cotton are ordered to reimburse Phoenix equally for any statutory costs and attorneys' fees associated with bringing this motion, and the SRC Defendants' share is not to be paid by their insurers. This figure is to be extracted from time records etc. and the figure will come to me first for approval. They are also ordered to pay $10,000 each for the re-depositions of Schack, Van Pelt, and Hopkins for the limited purpose of inquiring into issues raised by the documents recovered from the server. These sanctions are to be borne by the SRC Defendants and Mound Cotton equally, and not by the Defendants' insurance carriers. Phoenix is not entitled, however, to reimbursement for converting the documents into a searchable format as it chose to receive the documents in hard copy over the searchable "Case Vault" format offered by Mound Cotton. Similarly, it chose to review the documents under time constraints instead of requesting an adjournment of the trial.

## IV. CONCLUSION

Phoenix's motion for monetary sanctions is granted to the extent set forth above. Its motion for all other sanctions is denied. The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
May 22, 2006

_____
U.S.D.J.